PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

KELSEY C. DAVIDSON (CABN 322323)
SOPHIA COOPER (CABN 320373)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6959
    Fax: (415) 436-7027
    kelsey.davidson@usdoj.gov
    sophia.cooper@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:23-CR-00217-WHA |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Court: Hon. William H. Alsup |
| FERNANDO AGUILERA, | Hearing Date: May 27, 2025 |
| Defendant. | Hearing Time: 9:00 a.m. |

**I.     INTRODUCTION**

On April 7, 2023, the defendant, Fernando Aguilera, knowingly possessed ammunition and a gun with no serial number despite being prohibited to do so as a convicted felon. The defendant's criminal history and behavior during the offense warrants a lengthy sentence in order to deter his conduct and protect the community. Based on the nature and circumstances of the offense in this case and the defendant's criminal history, the government submits that a sentence of 60 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

UNITED STATES' SENTENCING MEMO     1
3:23-CR-00217-WHA

II. **OFFENSE CONDUCT**

The government generally agrees with the recitation of offense conduct in the Presentence Investigation Report ("PSR") prepared by the Probation Office. PSR at ¶¶ 4-11. On April 7, 2023, SFPD received two ShotSpotter activations at approximately 1:55 a.m. and 1:59 a.m. Dkt. 46 at 6-9) (United States' Post-Hearing Opposition to Defendant's Motion to Suppress). *Id.* Additionally, at approximately 2:01 a.m., dispatch broadcast that a 911 caller had reported gunshots in the area of 2601 Mission. *Id.* SFPD responded to the area of El Trebol Bar, and a witness, H.B., approached Officer Hurtado and Officer Grech's patrol vehicle. *Id.* H.B. said he saw someone shoot three shots into the air and described him as a Hispanic male wearing a blue jacket. *Id.* H.B. also said that the suspect was walking away and pointed at someone walking westbound on 22nd Street towards Mission Street. *Id.* Hurtado saw the person H.B. was pointing at and only saw one person walking away wearing a bright blue jacket. *Id.*

Surveillance footage from El Trebol Bar corroborates H.B.'s testimony. It shows the defendant take the gun out at a crowded bar on multiple occasions. *See* Tr. Ex. 1 at 7:30 and 25:30

 

Additionally, surveillance footage from outside the bar shows him fire into the air two separate times. Tr. Ex. 3 at 8:10-8:25; Tr. Ex. 4 at 4:23.




Hurtado walked towards El Trebol Bar in the direction that H.B. had pointed and met up with Officers Frisk and Foote, who had recently arrived. *Id.* As they walked towards the defendant, a woman on the corner of 22nd and Capp pointed at someone in the same direction and said, in Spanish, "he's over there." *Id.* Frisk saw the defendant turn left (southbound) on 22nd Street. *Id.* At that point, Grech drove up, Hurtado got in the car, and they drove towards the suspect. *Id.*

Hurtado pointed out the suspect to Grech, and the officers stopped the car, identified themselves as police, and yelled at the defendant to get on the ground and stop in an attempt to detain him. *Id.* The defendant took off running. *Id.* Hurtado ran after him, and the defendant turned around and pointed something at Hurtado, which Hurtado believed was a gun. *Id.* Hurtado jumped out of the way before continuing his pursuit. *Id.* Hurtado lost sight of the defendant, and officers began to search for him. *Id.*

A third witness, B.M., then told officers that the suspect was hiding by the white fence at the house on the corner, across the street from where they were standing. *Id.* Hurtado asked whether the suspect was still hidden, and B.M. said yes, he was by white fence and pointed to the house where the defendant was found. *Id.* Officers found the defendant lying on the ground behind the white fence in a garden area between the house and fence. *Id.* A gun was lying near his head. *Id.*

UNITED STATES' SENTENCING MEMO
3:23-CR-00217-WHA
3

Officer Aiello testified at trial that he seized the gun from near the defendant's head and saw that there was an unfired cartridge in the chamber and that the gun appeared to be malfunctioning. Aiello removed the unfired cartridge from the 9mm gun and saw that it was a 357 Sig RHT NPA cartridge. Aiello testified that, based on his training and experience, the defendant tried to fire the gun because there was no other way for the bullet to get into the chamber.

Officer Castaneda also testified at trial. He explained that he searched the defendant incident to arrest, and the defendant had a magazine in his pocket and a crossbody bag strapped to his chest, which had ten rounds of 9mm ammunition in it.

At the time of his arrest, the defendant had previously been convicted of a crime punishable by more than one year and knew he had been convicted of such a crime. The defendant has a prior felony conviction for being an accessory (Cal. Pen. Code § 32), a prior felony for being a prohibited person with ammunition (Cal. Pen. Code. § 30305(a)(1)), and two prior felony convictions for second degree burglary (Cal. Pen. Code § 459). PSR ¶¶ 30-32.

**III.   PROCEDURAL HISTORY**

On July 18, 2023, the grand jury returned a one count Indictment against the defendant charging him with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). Dkt. 1. The defendant was found guilty of Count One after a bench trial on February 12, 2025. Dkt. 84

**IV.   SENTENCING GUIDELINES CALCULATION**

The government agrees with the Probation Office's calculation of the Sentencing Guidelines. PSR at ¶¶ 17-25. Specifically, the government agrees that the defendant's total offense level is 18, and the calculations are as follows:

|  | U.S.S.G. Section | Level/Points |
|---|---|---|
| Base offense level | § 2K2.1(a)(6)(A) | +14 |
| Adjustments | § 2K2.1(b)(6)(B) | +4 |
| Total offense level |  | 18 |

The government does not believe the defendant is entitled to any reduction for acceptance of responsibility. A defendant is entitled to a two-point offense level reduction where he "clearly demonstrates acceptance of responsibility for his offense." USSG § 3E1.1(a). "The primary goal of the

UNITED STATES' SENTENCING MEMO            4
3:23-CR-00217-WHA

reduction is to reward defendants who are genuinely contrite." *United States v. McKinney*, 15 F.3d 849, 853 (9th Cir. 1994) (emphasis added). The defendant shoulders the burden of establishing entitlement to such a reduction. *United States v. Innie*, 7 F.3d 840, 848 (9th Cir. 1993). The Guidelines identify several non-exhaustive factors to consider in evaluating acceptance of responsibility. USSG § 3E1.1 cmt. n.1. As relevant here, those include: (i) truthfully admitting the conduct comprising the offense of conviction, (ii) truthfully admitting or not falsely denying or frivolously contesting any additional relevant conduct for which the defendant is accountable under USSG § 1B1.3, and (iii) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility. *Id.* cmt. n. 1(A), (H). Although a defendant who puts the government to its burden of proof at trial usually is not entitled to credit for acceptance of responsibility, there is no per se rule precluding credit in such a circumstance. *Id.* cmt. n.2. "In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt." *Id.* Where a defendant does go to trial, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." *Id.*

Here, the defendant has never admitted guilt and is appealing a motion to suppress and two motions to dismiss. The suppression issue is both factual and legal. And, while the defendant did ultimately stipulate to facts, there was prolonged discussion as to the nature and contents of those stipulations resulting in the government having to prepare a nexus expert and four witnesses before stipulations were ultimately filed the night before trial. More, the defendant refused transport on his originally scheduled trial date of January 27, 2025. Dkt. 82.

The government also agrees with Probation's finding that the defendant has nine criminal history points, placing him in Criminal History Category V. *Id.* at ¶¶ 27-35. An offense level of 18 with a Criminal History Category V yields an advisory sentencing range of 51-63 months of imprisonment. *Id.* at ¶ 67.

## V.   APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520

F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Id.* at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(5)** the need to provide restitution to any victims of the offense.

## VI. RECOMMENDED SENTENCE AND SECTION 3553(a) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a sentence of 60 months of imprisonment followed by three years of supervised release. Such a sentence would be sufficient, but not greater than necessary, given the nature and circumstances of the offense and the history and characteristics of the defendant.

First, the nature and circumstances of the offense warrant a significant sentence. The defendant took out a ghost gun at a crowded bar at least twice. He then left the bar and fired the gun into the air on two separate occasions. Both times, surveillance footage shows people and/or cars nearby. The defendant's actions were extremely dangerous and could have resulted in severe injury or death had his errant shots hit someone. Additionally, the defendant tried to kill SFPD Officer Hurtado. Officer Hurtado testified that while he was chasing the defendant, the defendant turned around and punched his arm out. Tr. Ex. 17 at 23. He explained that he saw an object and "thought that [the defendant] was going to shoot at [him]" so he jumped aside rather than waiting to see if it was an actual gun. *Id.* Officer Aiello then testified that the 9mm gun recovered from near the defendant's head was in a state of malfunction because

the wrong caliber bullet was stuck in the chamber. He explained that the only way for that to happen was if the gun was fired. Combined, this testimony proves that the defendant turned around and fired a loaded weapon at Officer Hurtado while he was being chased. It is only by sheer luck that the defendant did not injure or kill Officer Hurtado or anyone else that night.

Second, the history and characteristics of the defendant warrant a sentence of 60 months. In a span of just two years, from 2019 to 2021, the defendant was convicted of one misdemeanor and four felonies, not including the instant offense. The defendant was convicted of a 2019 misdemeanor battery, where he punched a woman in the fact with a closed fist, strangled her, and then later threatened to kill her. The defendant was then convicted of four felonies in 2019, 2020, and 2021. The defendant's two 2021 felonies appear to have occurred within four months of each other. All four felonies involved robberies and weapons, including, for example, incidents where the defendant acted as a look-out (with ammunition in his pocket) while his accomplice loaded stolen bicycles from an occupied residence into a stolen truck; robbing a victim with a knife; burglarizing a school with a BB gun; and stealing items from a garage and putting them into a stolen vehicle. In addition to his convictions, the defendant also has five other arrests, many of which involve him possessing knives and fleeing from the police.

The defendant has had numerous opportunities to rehabilitate himself over the years, including by attending a residential substance abuse treatment program, but instead, he left the program early after just four months, and chose to continue comitting crimes, possessing weapons, and fleeing from the police. The defendant's habit of possessing weapons and fleeing from the police is especially dangerous to the community.

The defendant's actions on April 7, 2023 and his criminal history show that only a significant sentence will promote respect for the law, protect the community, and help deter the defendant's future criminality.

**VII.   CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of 60 months' imprisonment, followed by a three-year term of supervised release.

//

//

UNITED STATES' SENTENCING MEMO                7

| | |
|---|---|
| DATED: May 20, 2025 | Respectfully submitted,<br><br>PATRICK D. ROBBINS<br>Acting United States Attorney<br><br>  /s/  <br>KELSEY C. DAVIDSON<br>SOPHIA COOPER<br>Assistant United States Attorneys |